UNITED STATES DISTRICT COURT
FOR THE DISTRICT NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | 09-CR-555 |
| v. : | |
| : | |
| BARRY E. GOLDMAN : | |
|     *dba Torture Portal* : | |
|     *dba Masters of Pain* : | |
|     *dba Bacchus Studios,* : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S PRE-TRIAL MOTIONS

Now comes the United States of America, by and through its undersigned attorneys, and files this Response to Defendant's Pre-Trial Motions. For the following reasons, defendant's Motions should be denied.

## STATEMENT OF FACTS

This case involves the sale and interstate shipment of allegedly obscene movies by defendant Goldman from the state of New Jersey to the states of Virginia and Montana on three separate occasions. The purchases were made from the defendant by FBI agents acting in an undercover capacity.

The first purchase occurred on July 27, 2006. On that date, FBI Special Agent Angela R. McCravy ordered six DVD movies from defendant Goldman including two movies entitled, "Torture of a Porn Store Girl" and "Defiant Crista Submits." The DVD movies were mailed in a package via the United States mail from "B. Goldman" at 38 Park Street, Jersey City, New Jersey 07304 to a post office box in Virginia. The package was postmarked July 29, 2006. This purchase is the subject of Counts One and Two of the Indictment.

The second purchase occurred on September 13, 2007. On that date, FBI Special Agent Dan Bradley ordered three DVD movies from the defendant entitled, "Torture of a Porn Store Girl," "Defiant Crista Submits," and "Pregnant and Willing." The DVD movies were mailed to a post office box in Montana via the United States mail. The return address on the package was Barry Goldman, 38 Park St., Jersey City, NJ 07304 and the package was postmarked September 17, 2007. This purchase is the subject of Counts Three, Four and Five of the Indictment.

The third and final purchase occurred on March 31, 2008. On that date, Agent Bradley ordered the same three DVD movies that he had ordered from defendant Goldman on September 13, 2007. These movies are entitled: "Defiant Crista Submits," "Torture of a Porn Store Girl," and "Pregnant and Willing." On April 7, 2008, the DVD movies arrived at a post office box in Montana. They had been shipped via the United States mail. The return address on the package listed "B. Goldman" with an address of 38 Park Street, Jersey City, New Jersey 07304, and the package was postmarked April 3, 2008. This purchase is the subject of Counts Six, Seven and Eight of the Indictment.

On or about July 23, 2009, a Grand Jury returned an indictment against the Defendant in the District Court of New Jersey, charging him with using the U.S. Mail to send obscene matter in violation of 18 U.S.C. Section 1461. He was also charged with Criminal Forfeiture, 18 U.S.C. Section 1467. A motions hearing is scheduled for October 19, 2009. Trial is set for October 27, 2009.

**ARGUMENT**

**I.   THE GOVERNMENT HAS PROVIDED ALL DISCOVERY TO DEFENDANT GOLDMAN PURSUANT TO FED. R. CRIM. P. 16.**

Defendant complains that he has not received discovery relating to Counts One and Two in the Indictment. Defendant is mistaken. On July 27, 2006, FBI Special Agent Angela R. McCravy ordered six DVD movies from defendant Barry Goldman including the movies entitled, "Torture of a Porn Store Girl" and "Defiant Crista Submits." The DVD movies were mailed in a package via the United States mail from "B. Goldman" at 38 Park Street, Jersey City, New Jersey 07304 to a post office box in Virginia. The package was postmarked July 29, 2006. Thus, defendant was charged in Counts One and Two of the Indictment with using the U.S. mail to send obscene matter on July 29, 2006 (not July 27, 2006), in violation of 18 U.S.C. Section 1461. Defendant has been provided with all discoverable material relating to these offenses in accordance with Rule 16. There is no additional material to provide.[1]

**II.   THE GOVERNMENT HAS PROVIDED ALL INFORMATION TO DEFENDANT GOLDMAN PURSUANT TO BRADY/GIGLIO.**

Defendant asserts and the government agrees that the government is required to disclose exculpatory and impeachment evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972). The government is aware of its obligations under Brady and Giglio and is in

---

[1] Defendant also requests information about lost or destroyed evidence. Defendant's Motion at 7. Defendant has been provided with information that taped telephone conversations between Special Agent McCravy and defendant Goldman relating to the July 27, 2006, purchase were either lost or inadvertently destroyed. In an FBI report dated July 27, 2006, there are references to email exchanges between Agent McCravy and the defendant concerning the same purchase. The undersigned attorney has learned that these emails are not in the investigative file, however, they may not have been printed during the course of this investigation.

compliance. Indeed, the government has provided the defense with a copy of the entire investigative file.

Defendant also requests: 1) information concerning whether any law enforcement officer or prosecutor expressed a personal belief that the charged movies did not violate the community standards in New Jersey; 2) information as to why prosecutions were or were not initiated in particular jurisdictions; and, 3) information concerning any jurisdiction that declined prosecution of this case. None of the requested information, if it even exists, is exculpatory or impeachment evidence.

First, a prosecutor or law enforcement officer's personal opinion that a particular matter is obscene or not obscene is not exculpatory and has no bearing on the legal issue of whether the material charged in this case is obscene. It is well-settled that in obscenity cases it is the sole province of the jury to apply its "contemporary community standards" to determine what is obscene under the test set forth in <u>Miller v. California</u>, 413 U.S. 15 (1973).[2] Juries, not prosecutors or investigators make that decision. <u>Id.</u> at 30-31; <u>Hamling v. United States</u>, 418

---

[2] To find the material in this case obscene, the jury must determine that it satisfies the three-prong test set forth in the seminal Supreme Court case, <u>Miller v. California</u>. Under this test the trier of fact must determine:

   1)    Whether the average person, applying contemporary community standards, would find that the material, taken as a whole, appeals to the prurient interest;

   2)    Whether the average person, applying contemporary community standards, would find that the material depicts or describes sexual conduct in a patently offensive manner; and

   3)    Whether a reasonable person, viewing the material as a whole, would find that the material lacks serious literary, artistic, political or scientific value.

U.S. 87, 104 (1974) (jurors must draw on their own knowledge of the average person in the community). For the same reasons, a law enforcement officer's personal opinion is neither exculpatory nor impeachment material and is simply wholly irrelevant to the jury's determination of obscenity. The personal opinions of the attorneys and witnesses have no place in an obscenity trial.

Second, information concerning why the Department of Justice's Obscenity Prosecution Task Force initiated a case in a particular jurisdiction and information concerning whether a particular U.S. Attorney's Office declined to prosecute a case in its jurisdiction is not Brady/Giglio material. Such evidence is not material to the defendant's guilt or punishment, nor does it affect any government witness's credibility. Materiality of evidence is determined by whether there is a "reasonable probability" that its disclosure would affect the outcome of the proceeding. See Strickler v. Greene, 527 U.S. 263, 280-81 (1999); United States v. Bagley, 473 U.S. 667, 682 (1985). Internal deliberations of Department of Justice attorneys could in no way affect the outcome of the proceeding.

Additionally, such evidence is considered to be work product and is not discoverable under Fed. R. Crim. P. 16(a)(2), which provides:

> Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

Internal Department of Justice documents containing a prosecutor's impressions are not subject to disclosure. For example, in a death penalty case where a prosecutor had to submit an internal death penalty evaluation form to his supervisor, the Ninth Circuit Court of Appeals held that such a form is protected by both the deliberative process privilege and the work product privilege. United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000). The death penalty form contained prosecutors' opinions, recommendations and advice about agency policies. Id. As such, the court held that this document clearly plays an integral role in the government's deliberative and policy-making process and should be protected under the deliberative process privilege. Id. at 1247. The court further held that the form is also protected under the more general work product privilege as it is an internal government document prepared by the U.S. Attorney in anticipation of litigation. Id. The rationale behind protecting such a document was summarized by the court as follows:

> Discovery of the deliberative materials would have a chilling effect on the thorough evaluation of these issues and hinder the just, frank, and fair review of the decision for every individual defendant who faces the prospect of receiving a Notice of Intent to Seek the Death Penalty. . .

In another case holding that a death penalty form is protected both under the deliberative process and work product doctrines, United States v. Lujan, 530 F. Supp. 2d 1224, 1251 (D.N.M. 2008), a district court judge for the District of New Mexico explained the two doctrines and their significance:

> The deliberative process privilege 'covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are

> formulated.' *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001) (quoting *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)). The purpose of the deliberative process privilege is to encourage frank discussion of legal or policy matters in writing, thereby improving agency decision-making processes. (internal citations omitted). For the deliberative process privilege to apply, the document must be both "predecisional" and "deliberative." (internal citations omitted).
>
> The work product privilege, in contrast, protects the attorney's mental processes. *Klamath Water Users Protective Ass'n,* 532 U.S. at 8. The Supreme Court has held that this doctrine applies to criminal, as well as civil, litigation. *United States v. Nobles,* 422 U.S. 225, 236-38 (1975). As the Supreme Court explained, 'The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.' *Id.* at 238. The attorney work-product privilege 'clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy.' *Sears, Roebuck & Co.,* 421 U.S. at 154. Federal Rule of Criminal Procedure 16(a)(2) recognizes the work product privilege, exempting from disclosure 'reports, memoranda, or other internal government documents made by an attorney for the government ... in connection with investigating or prosecuting the case.' (internal citations omitted).

*Id.* at 1251.

Any documentation which memorializes the thought processes behind the prosecution of this case and any discussions among prosecutors should be protected under Fed. R. Crim. P 16(a)(2), the deliberative process doctrine, and the work product doctrine. The rule and privileges rest on "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and it object is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." Department of the Interior

and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (internal citations omitted).

Defendant also requests that the government identify all law enforcement agents involved in the investigation of the defendant, whether or not such agents will be called as witnesses at trial. The identity of prospective government witnesses is not discoverable under Fed. R. Crim. P. 16.

Finally, defendant requests that the government provide any impeachment information about these agents, as well as review each agent's personnel files to determine: 1) whether the agents are under investigation for "any professional or criminal liability or complaints;" 2) whether the agents have committed any crimes or bad acts, have a medical or psychiatric condition or drug or alcohol uses that would impact the agents ability to testify; and, 3) whether the agents are associated with any group "of which a platform, purpose, or part included any anti-obscenity, anti-pornography, anti-BDSM slant, activities, actions, lobbying or goals." Defendant's Motion at 6-7. The government has conducted a review of agency files for impeachment evidence relating to potential law enforcement witnesses and has found none. Of course, the agent in this case was associated with a group investigating criminal violations and under federal criminal law, namely the U.S. government.

### III. THE DEFENDANT IS NOT ENTITLED TO GRAND JURY INFORMATION PURSUANT TO FED. R. CRIM. P. 6(e)

Defendant requests the Court grant him access to the grand jury transcript that resulted in the indictment in this case pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i).  Defense counsel asserts that she has "a good faith basis to believe that the government instructed the grand jury using the incorrect standard" on the law of obscenity and that she intends to file a motion on such grounds.  Defendant's Motion at 8-9.  Defense counsel's claim of error, without anything more, can only be pure speculation.  There is simply no evidence that the Grand Jury in this case was erroneously instructed on the law of obscenity.  Moreover, defendant has not made an adequate showing that he is entitled to disclosure of grand jury material pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i).

The general rule is that grand jury proceedings are secret.  Fed. R. Crim. P. 6(e).  However, disclosure of grand jury materials is permitted under certain rare circumstances: "when so directed by a court preliminarily to or in connection with a judicial proceeding," Fed. R. Crim. P. 6(e)(3)(E)(i), or, when a defendant "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," Fed. R. Crim. P. 6(e)(3)(E)(ii).  In these instances, the defendant has the burden of showing that a "particularized need" or "compelling necessity" exists and that such need or necessity outweighs the policy of grand jury secrecy.  Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959); United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958); Smith v. United States, 423 U.S. 1303, 1304 (1975); In re Grand Jury

Matter, 516 F. Supp. 27, 28 (E.D. Pa. 1981). In this case, defendant has not made the requisite showing of "particularized need" or "compelling necessity" that would allow him access to grand jury proceedings. Rather, he has simply stated in bald, conclusory terms that instructional error occurred in the grand jury and that he plans to file a motion to dismiss the indictment on those grounds. Defendant's Motion at 8-9.

Challenges to grand jury instructions, however, are not grounds for dismissing a valid indictment. Therefore, defendant's assertion that he intends to file a meritless motion should not be grounds to gain access to grand jury material. As a general rule, indictments "will not be the subject of independent scrutiny and [are] given a presumption of regularity." United States v. Hart, 513 F. Supp. 657, 658 (E.D. Pa. 1981); United States v. Azad, 809 F.2d 291, 295 (6th Cir. 1986) ("presumption of regularity attaches to grand jury proceedings"), cert. denied, 481 U.S. 1004 (1987). A defendant has a "difficult burden" of proving any irregularity. United States v. Battista, 646 F.2d 237, 242 (6th Cir.), cert. denied, 454 U.S. 1046 (1981). "Mere speculation" that improprieties may have occurred in the grand jury will not suffice. United States v. Budzanoski, 462 F.2d 443, 454 (3d Cir.), cert. denied, 409 U.S. 949 (1972). Challenges to the instructions given to the grand jury are not grounds for dismissing an otherwise valid indictment. Hart, 513 F. Supp. at 658; United States v. Buchanan, 787 F.2d 477, 487 (10th Cir. 1986) (challenges to the instructions given to the grand jury as to the elements of the offenses are not grounds for dismissal of an indictment that is valid on its face), reversed on other grounds, United States v. Welch, 928 F.2d

915 (10th Cir. 1991). In this case, defendant does nothing more than conjecture that the grand jury received allegedly incorrect instructions on aspects of obscenity law. Defendant has not come close to meeting his burden to gain access to grand jury material in order to challenge the indictment.

The government, of course, is precluded by Fed. R. Crim. P. 6(e) from revealing what instructions actually were given to the grand jury who returned an indictment against the defendant. The government, therefore, can neither concede nor deny that the grand jury was wrongfully instructed. The defendant, on the other hand, claims to know what occurred before the grand jury when he divulges that the government "instructed the grand jury to evaluate the movies using the more general Miller standard, which makes reference to *general* community standards (rather than to the standards of the BDSM community)." Defendant's Motion at 8, n.4.

Defendant's assertions of alleged error are based upon a fundamental misunderstanding of obscenity law. Indeed, to instruct the grand jury in the manner proposed by the defendant would be instructional error. Defendant's assertion suggests that he is confused about two distinct parts of the Miller test – "prurient appeal" and "contemporary community standards." The first prong of the Miller test requires a jury to determine whether the average person, applying contemporary community standards, would find that the material, taken as a whole, appeals to a prurient interest. Miller v. California, 413 U.S. 15, 23 (1973). Where material is designed for and primarily disseminated to a clearly defined "deviant group," rather than the public at large, the prurient appeal test is satisfied

11

if the "dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group." Thus, material can have prurient appeal to some even when it repulses others. Mishkin v. New York, 383 U.S. 502, 508 (1966) (finding material obscene involving "deviant sexual practices" such as flagellation and fetishism); see also Pinkus v. United States, 436 U.S. 293, 302 (1978) (material depicted "aberrant sexual activities;" jury was properly instructed to consider whether material would appeal to the member of a deviant sexual group); United States v. Petrov, 747 F.2d 824, 830-31 (2d Cir. 1984) (finding that material involving bondage and bestiality appeals to the prurient interest of a deviant segment of society). Furthermore, the jury does not determine whether the material would appeal to the prurient interest of the average person. Rather, the proper inquiry is whether the average person, applying contemporary community standards, would find that the material appeals to a prurient interest, that is, to someone's prurient interest. Guglielmi, 819 F.2d at 455. The "someone's prurient interest" referred to in Guglielmi may or may not be a member of a deviant group referred to in Mishkin. Contrary to defendant's assertions, the Miller test is applicable to all obscenity cases, even those cases involving obscene materials that may appeal to the prurient interest of a deviant group.

Connected to the jury's determination of prurient appeal is their application of their own "contemporary community standards." Community standards are not an element of the offense, but are a "measure against which the jury decides the questions of appeal to prurient interest and patent offensiveness."

12

Smith v. United States, 431 U.S. 291, 302 (1977). Thus, defendant's statement that there are "general community standards" and "standards of the BDSM community" reflects his misunderstanding of and confusion with the Miller test. As explained above, the jury may consider members of a deviant sexual group in deciding whether the material appeals to a prurient interest under the first prong of Miller. In their consideration, however, the jury does not apply "BDSM community standards" but rather, they must be instructed to apply their own "contemporary community standards." This means that juries are required to judge the charged material based upon what is obscene in their own local communities. Miller, 413 U.S. at 30-31. It is left to the jury to "determine the collective view of the community, as best as it can be done." Pinkus, 436 U.S. at 300-01. Thus, instructions to the grand jury in the manner postulated by the defendant clearly would have been improper.

**IV.   THE GOVERNMENT DOES NOT INTEND TO INTRODUCE OTHER CRIMES EVIDENCE PURSUANT TO FED. R. EVID. 404(b) EVIDENCE, NOR DOES IT INTEND TO INTRODUCE EVIDENCE OF DEFENDANT'S PRIOR CONVICTIONS PURSUANT TO FED. R. EVID. 609(a).**

The government does not intend to introduce "other crimes" evidence pursuant to Fed. R. Evid. 404(b). Nor, does the government intend to impeach the defendant with any of his prior convictions pursuant to Fed. R. Evid. 609(a).

**V.   THE GOVERNMENT WILL COMPLY WITH THE JENCKS ACT IN A TIMELY FASHION THAT WILL NOT DELAY THE TRIAL.**

The government is aware of its obligation to produce witness statements in accordance with the Jencks Act, 18 U.S.C. Section 3500, and will do so in a

timely fashion that will not delay the trial. The government notes that the defendant's "statements or comments" are subject to disclosure pursuant to Rule 16(a)(1), not the Jencks Act. As stated above, the government is in compliance with Rule 16.

Respectfully submitted,

 /s/_____
BONNIE HANNAN
PAMELA S. SATTERFIELD
Trial Attorneys
United States Department of Justice
Criminal Division
1301 New York Avenue, N.W.
Suite 500
Washington, D.C. 20530
(202) 353-8855
Bonnie.Hannan@usdoj.gov
Pamela.Satterfield@usdoj.gov

## CERTIFICATE OF SERVICE

I, Bonnie Hannan, Trial Attorney with the United States Department of Justice, Criminal Division, hereby certify that the foregoing Response to Defendant's Pre-Trial Motions was filed on October 5, 2009, by CM/ECF which will send an electronic copy to counsel for the defendant, Lisa Mack, Office of the Federal Public Defender, 972 Broad Street, 4th Floor, Newark, New Jersey 07102.

/s/_____
Bonnie Hannan
Trial Attorney
United States Department of Justice
Criminal Division
1301 New York Avenue, N.W.,
Suite 500
Washington, D.C.  20530
(202) 353-8855
Bonnie.Hannan@usdoj.gov