# TABLE OF CONTENTS

Government's Response to Defendant's Motion to Dismiss ……………… 1

Factual Background ………………………………………….................. 1

    I.    The Government Conducted a Proper Investigation of the Defendant and Properly Obtained an Indictment in New Jersey …………………………………………………….. 6

        A.  The Indictment Should Not be Dismissed as the Government's Actions Were Proper and Did Not Violate the Due Process Clause. ……………….. 7

        B.  The Internal Policies of the Department of Justice are Irrelevant to these Proceedings and Have no Bearing on the Issue of Due Process. ……..……………… 12

    II.    The Government Did not Violate the Defendant's Speedy Trial Rights. …….…………………………………………………… 15

        A.  The Length of Pre-Indictment Delay is Irrelevant to a Sixth Amendment Analysis Under the Speedy Trial Clause. ………. 16

        B.  The Speedy Trial Act Has Not Been Violated. ………..……. 18

        C.  The Government's Dismissal of its Case in Montana was Necessary and did not Violate the Defendant's Speedy Trial Rights. ...……………………………………………….. 19

    III.    Defendant's Motion to Dismiss Based on the Government Allegedly Giving an Improper Instruction to the Grand Jury is Premature and Without Merit. …………………………………………………... 20

    IV.    Federal Obscenity Statues are Constitutional and Do Not Violate the Due Process Clause and the Right to Privacy Does Not Extend to the Distribution of Obscene Matters. ………………… 21

Certificate of Service ……………………………………………………… 24

Billings, Montana Criminal Docket Sheet………………………..…… *Attached*

Judge Cebull's Order…………………………………………………… *Attached*

Ninth Circuit Court of Appeals' Order…………………..………... *Attached*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 09-CR-555** |
| | : | |
| **v.** | : | |
| | : | |
| **BARRY E. GOLDMAN,** | : | |
| *dba Torture Portal,* | : | |
| *dba Masters of Pain,* | : | |
| *dba Bacchus Studios* | : | |
| **Defendant.** | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

The United States, by and through its attorneys, Bonnie Hannan and Pamela Satterfield, Trial Attorneys, United States Department of Justice, Criminal Division, hereby files the government's response to Defendant's Motion to Dismiss Indictment. The government requests this court deny defendant's motion in its entirety. In support of this request the government submits the following:

## FACTUAL BACKGROUND

This case involves the sale and interstate shipment of allegedly obscene movies by defendant Goldman from the state of New Jersey to the states of Virginia and Montana on three separate occasions. The purchases were made from the defendant by FBI agents acting in an undercover capacity.

On July 27, 2006, FBI Special Agent Angela R. McCravy, using an undercover credit card, ordered six DVD movies from defendant Barry Goldman (doing business as Torture Portal, Masters of Pain, and Bacchus Studios) including "Torture of a Porn Store Girl" and "Defiant Crista Submits." Agent McCravy placed the order by first talking to

the defendant by phone and then e-mailing him at SirBNY@aol.com.  The DVD movies
were mailed in a package via the United States mail on or about July 29, 2006 from "B.
Goldman" at 38 Park Street, Jersey City, New Jersey 07304 to an undercover post office
box in Northern Virginia.  This purchase is the subject of Counts One and Two of the
Indictment.

On August 30, 2007, FBI Special Agent Dan Bradley, while working in an
undercover capacity, contacted the defendant at the SirBNY@aol.com e-mail address and
asked him how he could order movies. The defendant responded with instructions
regarding payment. On September 13, 2007, Agent Bradley ordered three DVD movies
from the defendant entitled, "Torture of a Porn Store Girl," "Defiant Crista Submits," and
"Pregnant and Willing."  The DVD movies were mailed to an undercover post office box
in Emigrant, Montana via the United States mail.  The return address on the package was
Barry Goldman, 38 Park St., Jersey City, NJ 07304.  The package was postmarked
September 17, 1007.  This purchase is the subject of Counts Three, Four and Five of the
Indictment.

On January 25, 2008, Agent Bradley again reached out to the defendant via e-mail
regarding the purchase of additional DVD movies.  The defendant instructed the agent to
go to the website: www.clips4sale.com, and scroll to "masters of pain sadistic dommes",
to look at all of the box covers for his movies.  Agent Bradley was instructed to order the
DVDs directly from the defendant.  On March 31, 2008, Agent Bradley ordered three
DVD movies entitled, "Defiant Crista Submits," "Torture of a Porn Store Girl," and
"Pregnant and Willing."  On April 7, 2008, all three movies arrived at an undercover
mailbox in Billings, Montana. They were sent via the United States mail.  The return

address on the package listed "B. Goldman" with an address of 38 Park Street, Jersey City, New Jersey 07304, and the package was postmarked April 3, 2008. This purchase is the subject of Counts Six, Seven and Eight of the Indictment.

On August 21, 2008, a federal grand jury in the District of Montana, Billings Division, indicted Goldman for mailing obscene matter, in violation of 18 U.S.C. §1461 (Counts 1-3) and criminal forfeiture, in violation of 18 U.S.C. §1467. The charges corresponded to the movies the defendant mailed to Billings on April 3, 2008.

Prior to trial, the defendant filed a motion to transfer venue to the District of New Jersey pursuant to Fed. R. Crim. P. 21(b). [1]  The government opposed the defendant's motion, arguing that the crime of mailing obscene material under 18 U.S.C. § 1461 is a "continuing offense" for venue purposes. *See*, 18 U.S.C. § 3237(a) (para.2) ("Any offense involving the use of the mails…is a continuing offense.") Therefore, the government argued, the District of Montana was a proper venue in which to prosecute the crime. *See* 18 U.S.C. § 3237(a) (para.2) (continuing offenses "may be inquired of and prosecuted in any district from, through, or into which…mail matter…moves."); *see also, United States v. Bagnell*, 679 F.2d 826, 831 (11th Cir. 1982) ("It is well established that the use of common carriers to ship obscene materials and the interstate shipment of such materials are continuing offenses that occur in every judicial district which the material touches." ). The government explained that it chose to prosecute the case in Montana (the district of receipt), because "it is the district of receipt that suffers the brunt of the harms associated with the distribution of pornography and is most in need of protecting itself by the application of its community standards to the material in question." *Bagnell,*

---

[1] Rule 21(b) states that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice."

679 F.2d at 832.  At the time the indictment in Billings was sought, the government attorneys associated with the case overlooked a Department of Justice policy expressing disfavor of venue in the district of receipt in mail order obscenity cases initiated by test purchases absent evidence of prior mailings to the district.

On March 30, 2009, the district court judge in Billings granted the defendant's motion to transfer venue and ordered that the case be transferred to New Jersey.  Dkt. 22. (See Government's Attachment A, Billings, Montana Criminal Docket Sheet). On March 31, 2009, the government filed a motion to stay the transfer, as the government was considering a petition for writ of mandamus.  Dkt. 23.  At the request of the judge, the government filed a supplemental motion requesting a stay of the March 30, 2009 order, this time including the fact that it was the government's position that all time during the pendency of the stay was excludable time under the Speedy Trial Act. This motion was filed on April 1, 2009.  Dkt. 24.  On April 3, 2009, the government filed a Motion for Leave to File Motion for Reconsideration.  On that same date, the court granted the government's request for stay.  It further directed the Clerk of Court to refrain from transferring the matter to New Jersey until the court had the opportunity to rule on the government's motion seeking leave to file a motion for reconsideration.  Dkt. 26.  For purposes of the Speedy Trial Act, the Court held the days between its April 3, 2009 order and the date the file was to be transferred excludable. (See Government's Attachment B: Judge Cebull's Order, Document 26).  On April 24, 2009, the court denied the government's motion for leave to file motion for reconsideration and directed the Clerk of Court to transfer the file to New Jersey.  Dkt. 28.  On April 27, 2009, the government filed a Petition for a Writ of Mandamus and a Motion to Stay the district court's March

30, 2009 order granting the defendant's motion to transfer venue to New Jersey.  On May

12, 2009, a motions panel for the Ninth Circuit Court of Appeals granted the

government's motion to stay the transfer order, directed the defendant to file an answer to

the petition by May 18, 2009, permitted the government to file a reply brief by May 20,

2009 and directed the clerk to calendar the case for oral argument in June 2009.  (See

Government's Attachment C, Ninth Circuit Court of Appeals Order dated May 12, 2009).

Upon learning of the Department of Justice's policy on venue in postal obscenity cases,

the government promptly moved to withdraw its mandamus petition on May 22, 2009.

The government further requested that the Court of Appeals modify its May 12, 2009

stay order making clear that the stay shall remain in effect for seven days from the date of

the order allowing the government to withdraw its petition.  This was requested so that

the government had sufficient time to file a motion to dismiss the indictment in the

district court in Montana.  The Ninth Circuit granted these requests on May 26, 2009.

(See Government's Attachment C, Ninth Circuit Court of Appeals Order dated May 26,

2009).  On May 27, 2009, the government, without opposition from the defense, moved

to dismiss without prejudice the Montana indictment, and this request was granted by the

district court the same day. Dkt. 22, 23.

On or about July 23, 2009, a Grand Jury returned an indictment against the

defendant in the District of New Jersey, charging him with violating federal obscenity

statutes, including 18 U.S.C. Section 1461 (Mailing Obscene or Crime-Inciting Matter)

and 18 U.S.C. Section 1467 (Criminal Forfeiture).  Counts 1 and 2 of the indictment

correspond to the items ordered by Agent McCravy and mailed on or about July 29,

2006.  Counts 3, 4 and 5 of the indictment correspond to the items ordered by Agent

Bradley and mailed on or about September 17, 2007. Counts 6, 7, and 8 of the indictment correspond to the items ordered by Agent Bradley and mailed or about April 3, 2008.  A motions hearing is scheduled for October 19, 2009.  Trial is set for October 27, 2009.

     **I.**      **The Government Conducted a Proper Investigation of the Defendant and Properly Obtained an Indictment in New Jersey.**

"Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." *United States v. Batchelder*, 442 U.S. 114, 124 (1979).  Defendant makes much of the fact that this investigation began in 2006 and could have been brought in any number of jurisdictions.  Interestingly, it is later argued by the defendant that the government should have brought this case in New Jersey from the outset.  Yet, he argues that the case could have been brought in other jurisdictions such as the Southern District of New York or the Eastern District of Virginia and insists on knowing which, if any, other jurisdictions declined prosecution of this case.  It is wholly irrelevant whether or not the government considered prosecution in Virginia, whether any other United States Attorney's offices may have considered prosecution or why the original indictment was brought in the Billings division of Montana as opposed to the Missoula division, since it cannot be shown that the government in any way violated the law, engaged in prosecutorial misconduct or violated the defendant's Due Process rights.  There is a "presumption of regularity" which supports prosecutorial decisions and "in the absence of clear evidence to the contrary, courts presume… [prosecutors] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996), citing *United States v. Chemical Fountain, Inc.*, 272 U.S. 1, 14-15 (1926).

**A.      The Indictment Should Not be Dismissed as the Government's Actions Were Proper and Did Not Violate the Due Process Clause.**

The defendant claims the government engaged in outrageous conduct by forum shopping.  The government did, indeed, choose the venue in which to prosecute the case.  However, its motives were fair, right and just and did not amount to an abuse of discretion.  It should be noted that the defendant sought customers to whom he could sell his movies.  He advertised his products not only on the Internet, but also in person at an adult entertainment convention in Las Vegas in 2006.  He handed out his business card, gave out his phone number, gave out his business's world-wide web internet address and gave out his personal e-mail address in an attempt to solicit business.  Clearly, he was prepared to sell his movies anywhere.  So, the fact that law enforcement chose one of the four locations defendant willingly sold his products to them should not shock the universal sense of justice.

As a preliminary matter, it is clear that the government had the statutory authority to bring the case against Goldman in any place in which his offense began, continued or was completed. 18 U.S.C. § 3237(a) contains two sections bearing on the issue of venue.  It reads:

> (a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

Since the defendant used the mail to distribute his product, he engaged in a continuing offense for which he could have been prosecuted in any number of jurisdictions. Other than running afoul of an internal Department of Justice policy, there was nothing legally improper about originally prosecuting the defendant in Montana.

Courts have upheld convictions which were challenged on the grounds of improper forum shopping. For example, in *United States v. Bagnell*, 679 F. 2d 826 (11th Cir. 1982), the defendant challenged his conviction on the ground that the government's choice of venue constituted improper forum shopping, contending that the government chose to prosecute him in the Southern District of Florida because it believed a jury there would probably find the materials obscene. The Court of Appeals for the Eleventh Circuit affirmed the conviction, holding that "it is logical to try a defendant (in a federal obscenity case) in the district to which he allegedly mailed obscene materials," even if the choice of venue was based on a perceived likelihood of success, unless there is a showing of substantial prejudice." *Id*. at 832.

In *United States v. Rowe*, 414 F. 3d 271 (2d. Cir. 2005), the defendant posted an advertisement for child pornography in an Internet chat room and was convicted of advertising to receive or distribute child pornography. Before trial, the defendant, who resided in Kentucky, moved for a transfer of venue on both constitutional and convenience grounds from the Southern District of New York to the Eastern District of Kentucky. The District Court denied the defendant's motion and the Court of Appeals for the Second Circuit affirmed. The defendant argued that under the government's

theory of venue, "venue would be proper in any district from which one might read [his] online posting… [and] that under such a theory, venue for prosecuting criminal internet advertisers would be proper 'any place in the world.'" *Id.* at 274. Both the District Court and the Court of Appeals agreed that Rowe was correct. They also rejected his motion, holding that Rowe's offense nevertheless amounted to a continuing offense committed in New York. The Court of Appeals quoted approvingly the following language from the District Court's opinion:

> Rowe must have known or contemplated that the advertisement would be transmitted by computer to anyone the whole world over who logged onto the site and entered the chat room…It is clear that the chat room could be entered in this district and in fact was entered in this district… [by the undercover detective]. It is clear that both the statutes and the case law and the Constitution permit crimes of this sort to be prosecuted in any jurisdiction where any part of the crime occurred. *Id.* at 279.

In *United States v. Slepicoff*, 524 F. 2d 1244 (5th Cir. 1975) the defendant complained that federal obscenity statutes and the multivenue provisions contained in 18 U.S.C. § 3237 allowed improper forum shopping. In language similar to the language used by the Court in *Bagnell*, the Court of Appeals for the Fifth Circuit held:

> It is logical to try a defendant who is charged with a violation of [18 U.S.C] § 1461 in the district to which he allegedly mailed obscene materials. Appellant's choice to do business throughout the nation limited his right to be tried in the locality where he lives and bases his operations. 524 F. 2d at 1249. [2]

Thus, it was legally proper for the government to bring its case in Montana originally.

Furthermore, bringing a case where the defendant chose to do business did not constitute outrageous conduct and did not violate the Due Process Clause. The cases cited by defense on this issue either are inapposite or actually strengthen the

---

[2] In *Slepicoff* the defendant was convicted based on the contents of a brochure advertising obscene materials for sale. Apparently these brochures had been mailed nationwide. Hence, the Court's refernce to Slepicoff's "choice to do business throughout the nation."

government's claim that it did not engage in outrageous conduct. In the cases cited by defense, which are not forum shopping cases, the government either first suggested the criminal activity or supplied the means to effectuate the criminal activity. *See U.S. v. Lakhani*, 480 F. 3d 171, 180 (3d Cir. 2007) (government was involved as both a buyer and seller in supposed illegal arms transaction and first suggested the criminal activity), *United States v. Russell*, 411 U.S. 423. 426-27 (1973) (undercover narcotics agent investigating a defendant for illicitly manufacturing a drug offered defendant an essential ingredient, which was legal to possess but was difficult to obtain, in order to help facilitate manufacturing the drug), *United States v. Twigg*, 588 F. 2d 373, 375 (3d Cir. 1978) (government purchased and provided nearly all supplies needed for defendants to manufacture methamphetamine and provided an isolated farmhouse well suited for an illegal laboratory). The Supreme Court in *Russell* held that the law enforcement conduct stopped short of "violating that fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment." 411U.S. at 431. Likewise, the Third Circuit Court of Appeals found in *Lakhani*, 480 F. 2d 171,181 that the government's involvement in the investigation of a possible illegal arms transaction did not render the prosecution of the defendant fundamentally unfair. 480 F. 2d at 181. In fact, the court held:

'[T]he judiciary is extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause.' citing *United States v. Voigt,* 89 F.3d 1050, 1065 (3d Cir.1996). We have said that this principle is to be invoked only in the face of 'the most intolerable government conduct', citing *Jannotti,* 673 F.2d at 608-not 'each time the government acts deceptively or participates in a crime that it is investigating,' citing *Nolan-Cooper,* 155 F.3d at 231 (quoting *United States v. Mosley,* 965 F.2d 906, 910 (10th Cir.1992)). Moreover, due process should not be used in this context 'merely as a device to circumvent the predisposition test [of] the entrapment defense.' *Id.* (quoting *Mosley*, 965 F. 2d at 910)... In this spirit, we have been

'admonished' not to 'exercise 'a Chancellor's foot' veto over law enforcement practices of which [we might] not approve, citing *Beverly,* 723 F.2d at 12-13 (quoting *Russell,* 411 U.S. at 435, 93 S.Ct. 1637).

*Id.* at 180.

While the court in *Twigg* found that the government conduct was outrageous, 588 F. 2d 373, 380 (3d Cir. 1978), it is important to note that courts since *Twigg* have recognized the difficulty in showing that government conduct may shock the universal sense of justice.  In a footnote in another Third Circuit case, *U.S. v. Pitt*, 193 F. 3d 751, 761 n11, (3d Cir. 1999), the court stated:

> [Defendant] fails to recognize that, since *Twigg*, this Court has used extreme caution in finding due process violations in undercover settings. *United States v. Voigt*, 89 F. 3d 1050, 1065 (3d Cir.), *cert. denied*, 519 U.S. 1047, 117 S. Ct. 623, 136 L. Ed. 2d 546 (996).  *See also, United States v. Nolan-Cooper*, 155 F. 3d 221, 229-30 (3d. Cir. 1998) (continuing to recognize the existence of the defense but observing the hesitancy of the judiciary to uphold due process violation claims); *United States v. Gambino*, 788 F. 2d 938, 945 n. 6 (3d Cir.), *cert. denied*, 479 U.S. 825, 107 S.Ct. 98, 93 L. Ed. 2d 49 (1986) (same).  *See also, United States v. Jannotti*, 673 F. 2d 578 (3d Cir.), *cert. denied*, 457 U.S. 1106, 102 S. Ct. 2906, 73 L. Ed. 2d 1315 (1982); *United States v. Beverly*, 723 F. 2d 11 (3d Cir. 1983); *United States v. DeRaewal*, 10 F. 3d 100 (3d Circ. 1993), *cert. denied*, 511 U.S. 1033, 114 S. Ct. 1544, 128 L. Ed. 2d 196 (1994) (all calling *Twigg* into doubt).

*Id.* at 761.

In the instant case, the government was permitted to pursue charges in any district in which the offenses began, continued, or were completed.  It is only because of an internal Department of Justice policy that the charges were later dismissed in Montana.  It cannot be said that ordering materials into various districts amounted to outrageous conduct when it was the defendant who was advertising his products at a national pornography convention and on the world-wide web.  It was the defendant who solicited an undercover agent's business in Las Vegas, and it was the defendant who continued to make his products available

11

to the agents throughout the course of their investigation.    Unlike the aforementioned cases, the agents in this case provided nothing to the defendant to help him complete the crime, other than the money he demanded at a price he set and an undercover mailbox in which to receive the materials.

### B. The Internal Policies of the Department of Justice are Irrelevant to these Proceedings and Have no Bearing on the Issue of Due Process.

Under the umbrella of Due Process, the defendant also claims his rights were violated because the government (1) violated an internal policy on venue, (2) is prosecuting someone who is not a large-scale producer of pornography, and (3) caused the defendant to suffer prejudice.  Defendant references United States Attorney Manual (USAM) § 9-75.400 which states that "if a case is to be based solely upon test purchases by postal inspectors, it may be venued in the district of receipt where the government has some information showing that there were prior mailings into the recipient district by the individuals involved."  While it is true that when government attorneys originally brought a case against the defendant in Montana they had overlooked this policy, that does not rise to the level of a due process violation, especially in view of the government's prompt corrective action. First, there has been no showing that bringing the case in Montana was anything other than fair, right and just.   It is also irrelevant whether the government considered or requested prosecution in the Eastern District of Virgina or any other jurisdiction.   As the court in *Spillman v. United States*, 413 F. 2d 527, 530 (9th Cir. 1969) held:

> This court cannot inquire into the motives of the United States Attorney for prosecuting this appellant.  The United States Attorney must be given

wide latitude in order to effectively enforce the federal criminal laws. The policy which the appellant complains of is wholly voluntary in nature and is not founded on case law which would require this court to implement such a policy. *Citing Ackerman v. United States*, 293 F. 2d 449 (9th Cir. 1961); *Armijo v. United States,* 384 F. 2d 694 (9th Cir. 1967), certiorari denied, 390 U.S. 974, 88 S.Ct. 1074, 19 L. Ed. 2d 1186 (1968). [3]

Likewise, any comments by former Attorney General Michael Mukasey are irrelevant to these proceedings. While testifying before the Senate Judiciary Committee, Mr. Mukasey was asked what the Department's strategy was regarding the materials targeted in obscenity cases. He answered by referring to a recent obscenity case prosecuted by the Department, Paul Little, aka Max Hardcore, and stated that the Department sought cases which would have the greatest impact on removing obscene materials which degrade our society and depict behavior that is disgraceful. Robert D. Richards and Clay Calvert, *The 2008 Federal Obscentiy Conviction of Paul Little and What it Reveals About Obscenity Law and Prosecutions,* 11 Vand. J. Ent. & Tech. Law 543, 546-47 (Spring 2009). Mr. Mukasey never said that only large-scale producers of obscenity would be targeted or that the Department would not prosecute smaller producers who disseminate obscene materials which degrade our society. The defendant also references the USAM to make the point that it is inconsistent with Department policy to target small distributors. However, USAM § 9-75.020 ("General Prosecution Policies and Priorities") states to the contrary that:

> prosecution of cases involving relatively small distributors can have a deterrent effect and would dispel any notion that obscenity distributors are insulated from prosecution if their operations fail to exceed a

---

[3] The policy referenced by the court was a memorandum circulated by the Department of Justice regarding prosecuting those who mail private correspondence which is obscene only in cases involving repeat offenders or involving aggravated circumstances. *Id*. at 530.

predetermined size or if they fragment their business into small-scale operations.

Any statement of policy in the USAM or statement made by an Attorney General is a Department of Justice housekeeping matter. Such matters fall far short of grounds for dismissal. In *United States v. Hutul*, 416 F.2d 607, 626-27 (7th Cir. 1969), the court held:

> A letter, press release, or similar statement by the Attorney General, which is not promulgated as a regulation of the Justice Department and published in the Federal Register, cannot serve to invalidate an indictment returned by the Grand Jury. Rather, such a statement is merely a 'housekeeping provision' of the Justice Department and is so limited in its effect. (citations omitted).

Finally, the Defendant asserts he has endured anxiety and concern since this prosecution has been pending. He also states that his "privacy has been compromised." Defendant's Motion to Dismiss Indictment, p. 18. The government recognizes that individuals suffer a level of anxiety associated with being indicted. However, the government did nothing out of the ordinary in this case which would raise this defendant's level of anxiety higher than in the case of any other federally indicted defendant. The government had an obligation to investigate a case and pursue justice, which is what it did. The government also did nothing out of the ordinary to compromise the defendant's privacy. It issued a straightforward press release, which is customary of the Department. It is hard to imagine that this indictment exposed the defendant's privacy more than the defendant's own promotion of sexually explicit movies in which he stars on the Internet and at a national adult entertainment convention. As to the issue of memories fading and witness unavailability over the course of time, these are

issues which affect the government's case as well. However, unless it can be shown that the defendant suffered actual prejudice and that the government intentionally delayed the case to gain a tactical advantage, this case should not be dismissed. *See United States v. Lovasco*, 431, U.S. 783 (1977). A more detailed discussion regarding the length of this investigation is addressed in Section II. A. of this Response.

## II.    The Government Did Not Violate the Defendant's Speedy Trial Rights.

The Government did not violate the Speedy Trial Act ("the Act"), or the defendant's constitutional rights to a speedy trial. The case came to the District of New Jersey with a few days left in which to try the case under the Act. The government calculated that there were five days left, while the defense asserts there are only two days left. In any event, the government recognized there would only be a few days left on the speedy trial clock when the case arrived in New Jersey and immediately notified pre-trial services, defense counsel and the courtroom clerk of this as soon as the arraignment date was set. If the speedy trial clock is confusing, as the defendant claims, it is not because of the government's "maneuvers." It should be noted that 45 days elapsed before a motion to continue was filed by defense counsel in Montana, and this time was non-excludable time. (See Government's Attachment A, Criminal Docket, showing arraignment date of 9/16/08 and First Motion to Continue by Defense filed 10/31/08). The fact that 45 days elapsed before the defendant stopped the clock is nobody's "fault" and was not the result of either party's "maneuvers". All of the events which caused

the speedy trial clock to start and stop were attributable to the defendant until Judge Cebul ruled on the motion to change venue.  Prior to that time, the defendant filed two motions to continue and a motion to change venue.  If there is anything "confusing" about the speedy trial clock, it has nothing to do with the government motions filed after Judge Cebul's ruling on the venue motion.  By the time the government filed any motions in Montana, most of the time on the speedy trial clock had already elapsed.  Above all, there is still time left on the speedy trial clock in which to try the defendant, so the Act has not been violated.  Nor have the defendant's constitutional rights been violated.  Finally, the pre-indictment time period is irrelevant for purposes of the defendant's Sixth Amendment claim.  The protections afforded by the Speedy Trial Clause of the Sixth Amendment are only triggered once a defendant has been formally indicted or placed under arrest. *Lovasco*, 431, U.S. at 788-89.

A.    **The Length of Pre-Indictment Delay is Irrelevant to a Sixth Amendment Analysis Under the Speedy Trial Clause.**

In *Lovasco*, the Supreme Court held that as far as the Speedy Trial Clause of the Sixth Amendment is concerned, the length of any pre-indictment delay is "wholly irrelevant."  431 U.S. at 788-89.  Only a formal indictment or restraint on liberty such as an arrest triggers analysis under the Sixth Amendment. *Id.*   The court in *Lovasco* held that the statute of limitations provides "the primary guarantee against bringing overly stale criminal charges." *Id.* at 789, citing *United States v. Marion*, 404 U.S. 307 (1971), *United States v. Ewell*, 383 U.S. 116, 122, (1966).  However, there may be circumstances where an indictment filed within

the statute of limitations nevertheless violates Due Process under the Fifth Amendment. *Id.* The court in *Lovasco* noted that *United States v. Marion*, 404 U.S. 307 (1971), "makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Id.* at 790.

In the instant case it cannot be shown that the government intentionally delayed the case to gain a tactical advantage. Nor can it be shown that the defendant was substantially prejudiced by the pre-indictment delay. The government began investigating this case when Agent McCravy met the defendant at the Adult Entertainment Expo in January 2006. The first purchase from the defendant was made in July 2006. The second purchase was made from the defendant in September 2007. The final purchase was made from the defendant in April 2008. Approximately four months later, the case was indicted by a Montana grand jury in August 2008. It does not appear that there was any delay in indicting this case. The case was indicted shortly after the investigation was concluded. The investigation itself took less than two years to complete.

It appears the defendant is suggesting that perhaps the government should have concluded its investigation earlier and filed charges earlier. *Lovasco* holds that prosecutors are not required to do so and, that in fact, "no one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so." 431 U.S. at 792.

The Second Circuit also looked at the burden the defendant bears in claiming a Due Process violation for pre-indictment delay in *United States v. Cornielle*, 171 F. 3d 748 (2d Cir. 1999).  The court held that " a defendant bears the 'heavy burden' of proving both that he suffered actual prejudice because of the alleged pre-indictment delay *and* that such delay was a course intentionally pursued by the government for an improper purpose." *Id.* at 752, (citing *United States v. Scarpa,* 913 F. 2d 993, 1014 (2d Cir. 1990); *United States v. Hoo*, 825 F. 2d 667, 671 (2d Cir. 1979). *See also United States v. Baxt*, 74 F. Supp. 2d 425, 429 (D. N. J. 1989)  (holding that a Due process violation will be found only if the defendant shows that the government intentionally delayed bringing an indictment in order to gain a tactical advantage and this delay caused the defendant to suffer actual prejudice).

It has not been shown that the defendant suffered "actual" prejudice, or that the government sought an unfair tactical advantage by delaying the indictment.  In fact, as previously stated, there was no delay, as the government continued investigating this case between 2006 and 2008, and sought an indictment within four months of the conclusion of its investigation. Furthermore, the case was promptly re-indicted in the District of New Jersey. This occurred approximately two months after the dismissal in the District of Montana.

**B.    The Speedy Trial Act Has Not Been Violated**

As previously stated, there has been no violation of the Act.  Both counsel for the defendant and the government agree there is at least some time left in

which to try this case under the Act.  By the government's calculations, five days remain.  By defendant's calculations, two days remain.  In any event, it is unclear how the government violated the Act when the case has been set for trial on a date certain in conformity with 18 U.S.C. § 3161. (Speedy Trial Time Limitations and Exclusions).

**C.     The Government's Dismissal of its Case in Montana was Necessary and did not Violate the Defendant's Speedy Trial Rights.**

While defendant characterizes the government's petition for writ of mandamus "extraordinary", it was, in fact, necessary.  The District Court in Montana granted a motion to transfer venue under Rule 21(b).  The government objected because to transfer the case to New Jersey would have meant that a New Jersey jury would have had to make a determination of obscenity under the standards prevailing in Montana, a practical impossibility.  In fact, courts that have dealt with the issue of transfer of venue in an obscenity case have ruled that Rule 21(b) is invariably trumped by the necessity of applying the community standards of the receiving district in order to determine whether the matter in question is obscene.  For example, in *United States v. McManus*, 535 F.2d 460 (8th Cir. 1976), allegedly obscene materials were mailed from the Central District of California to the Northern District of Iowa. *Id*. at 461.  The case was indicted in the District of Iowa. *Id.* at 461-62.  The Court of Appeals found that since obscenity *vel non* must be decided based on a local community standard in Iowa, the case could not be transferred to California.  The court noted that, "Criminal defendants have no constitutional right to a trial in their home districts…" *Id.* at 463.   The court concluded by stating that under the circumstances of the case and in light of the Supreme Court cases regarding obscenity, it had no choice but to require that the case be tried in Iowa.

The Court allowed, however, that a Rule 21(b) might be granted in an obscenity case, where there is a strong showing of an intentional overreaching by the government. *Id*. at 464.

It was the government's position in this case that venue could not be transferred to New Jersey because it would be impossible for New Jersey jurors to apply Montana community standards.  That is why the government filed a petition for writ of mandamus. Furthermore, once the petition for writ of mandamus was filed, the only viable option left was to dismiss the case in Montana.  If the government did nothing and allowed the case to be transferred to New Jersey it would have been faced with the same problem of having a New Jersey jury apply Montana community standards. The government would have had to dismiss and re-indict in New Jersey, anyway.

The government re-indicted the case without delay.  The unopposed motion to dismiss was filed on May 27, 2009  (Dkt. 32) and the case was re-indicted in New Jersey on July 23, 2009.  The period during which no indictment was outstanding is excluded from the 70 day speedy trial calculation. [4]  The government's dismissal was proper and did not violate the defendant's speedy trial rights.

> **III.    Defendant's Motion to Dismiss Based on the Government Allegedly Giving an Improper Instruction to the Grand Jury is Premature and Without Merit.**

---

[4] 18 U.S.C. § 3161 (h)(5) [excludable time] states:

> If the information is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

*See also U.S. v. Rojas-Contreras,* 474 U.S. 231, 239,106 S.Ct. 555 (1985), (holding that "when an indictment is dismissed on motion of the Government, and the defendant is thereafter reindicted…the period during which no indictment is outstanding is excluded from the 70-day calculation").

Defendant asserts that the government incorrectly instructed the grand jury and is requesting a copy of the grand jury transcripts and has reserved the right to file a motion to dismiss at a later time.  Pursuant to Fed. R. Crim. P. 6(e)(e)(2)(B) (Grand Jury Secrecy), the government is prohibited from confirming or denying defendant's allegations.  Any response to this allegation would not only be improper, but would be premature since no motion has been filed yet.   The government also asserts that since the defendant has not even made a threshold showing that anything improper happened before the grand jury, he is not entitled to the grand jury transcripts.  Any references made by defendant to instructions given to the grand jury are purely speculative.  All of the issues surrounding the instructions given to the grand jury and all of the issues raised in Issue Five of Defendant's Notice of Motion to Dismiss are fully addressed in Government's Response to Notice of Motion.

> **IV.    Federal Obscenity Statues are Constitutional and Do Not Violate the Due Process Clause and the Right to Privacy Does Not Extend to the Distribution of Obscene Matters.**

Defendant urges this Court to find the federal obscenity statutes charged in this case unconstitutional because they violate the Due Process Clause.  In effect, the defendant is asking this court to set aside years of direct Supreme Court and federal court precedents that have time and again upheld federal obscenity laws.  The Court need only look to the Third Circuit's well-reasoned opinion in *United States v. Extreme Associates, Inc.*, 431 F. 3d 150 (3d Cir. 2005), *cert. denied*, 547 U.S. 1143 (2006), to find the rationale for

summarily rejecting this argument. The defendant even acknowledges that the law in *Extreme Associates* is controlling.[5]

The district court in *Extreme Associates* granted the defense's motion to dismiss the indictment on grounds that 18 U.S.C. §§ 1461 and 1465 violate the privacy rights of Extreme Associates' customers under the Fifth Amendment's doctrine of substantive due process. The district court found that the decision in *Lawrence v. Texas*, 539 U.S. 558 (2003) "seriously undermines the validity of [federal obscenity statutes]" because the "public sense of morality is not []a legitimate state interest that can justify infringing one's liberty interest to engage in consensual sexual conduct in private." *Extreme Associates,* 431 F. 3d at 154. The Third Circuit reversed, with alacrity, admonishing the district court for its failure to apply established Supreme Court precedent. The appellate court, relying on the principle articulated in *Agostini v. Felton*, 521 U.S. 203 (1997), stated that lower courts must adhere to binding precedent even if the lower court believes that precedent appears to be weakened by subsequent decisions. *Id*. at 155-56. The Third Circuit went on to state that, "In the broadest and most obvious sense, the Supreme Court has explicitly and repeatedly, in decisions rendered post-*Stanley*[6], upheld the constitutionality of federal statutes regulating obscenity." This court, therefore, should follow the Third Circuit's opinion in *Extreme Associates* and uphold the constitutionality of the federal obscenity statutes.

WHEREFORE, the government respectfully requests the defendant's Motion to Dismiss the Indictment be denied in its entirety.

---

[5] See defendant's Notice of Motion to Dismiss, page 29.
[6] *Stanley v. Georgia*, 394 U.S. 557 (1969) (holding the government could not constitutionally criminalize the simple possession of obscenity in the privacy of a person's residence.)

Respectfully submitted,


_____/s/_____
Bonnie Hannan
Pamela Satterfield
Trial Attorneys
U.S. Department of Justice
1301 New York Ave., NW, Suite 500
Washington, DC 20530
Phone: (202) 514-6017
Fax: (202) 307-2217
E-mail: Bonnie.Hannan@usdoj.gov
E-mail: Pamela.Satterfield@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Bonnie Hannan, Trial Attorney with the United States Department of Justice, Criminal Division, hereby certify that the foregoing Response to Defendant's Motion to Dismiss was filed on October 5, 2009, by CM/ECF which will send an electronic copy to counsel for the defendant, Lisa Mack, Office of the Federal Public Defender, 972 Broad Street, 4th Floor, Newark, New Jersey 07102.

/s/_____
Bonnie Hannan
Trial Attorney
United States Department of Justice
Criminal Division
1301 New York Avenue, N.W., Suite 500
Washington, D.C.  20530
(202) 353-8855
Bonnie.Hannan@usdoj.gov