## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————————— :

**UNITED STATES OF AMERICA**                         :
                                                     :
v.                                                   :          **No. 09-555 (JAG)**
                                                     :
**BARRY GOLDMAN,**                                   :
                                                     :
Defendant.                                           :
————————————————————————

————————————————————————————————————

### REPLY OF DEFENDANT BARRY GOLDMAN
### TO GOVERNMENT'S RESPONSE TO THE
### MOTION TO DISMISS THE INDICTMENT
### AND TO THE PRE-TRIAL MOTIONS
————————————————————————————————————

**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**District of New Jersey**

**Lisa M. Mack**
**Louise Arkel**
**1002 Broad Street**
**Newark, New Jersey  07102**
**(973) 645-6347**

*Attorneys for Defendant Barry Goldman*

## TABLE OF CONTENTS

I.     That the Government, With No Evidence That Mr. Goldman Had
       Conducted Any Business in Montana, Dragged Mr. Goldman Halfway
       Across the Country Solely to Obtain a Favorable Venue, Constitutes
       Outrageous Conduct and Warrants Dismissal.  . . . . . . . . . . . . . . . . . . . . . .  1

II.    The Government was Anything But Efficient in Bringing This Case.  The
       Indictment Should be Dismissed.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

III.   Mr. Goldman's Request That the Court Review the Grand Jury Instruction
       Is Appropriate.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

IV.    Mr. Goldman Seeks Exculpatory Evidence Concerning Any Declinations to
       Prosecute or Determinations that the Material Was Not obscene.  . . . . . .  8

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Certificate of Service  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *Attached*

I.    THAT THE GOVERNMENT, WITH NO EVIDENCE THAT MR. GOLDMAN HAD
      CONDUCTED ANY BUSINESS IN MONTANA, DRAGGED MR. GOLDMAN
      HALFWAY ACROSS THE COUNTRY SOLELY TO OBTAIN A FAVORABLE VENUE,
      CONSTITUTES OUTRAGEOUS CONDUCT AND WARRANTS DISMISSAL.

The government responds to Mr. Goldman's charge of outrageous government conduct by admitting that it "overlooked" Department of Justice policy that directed that Mr. Goldman be charged in New Jersey from the outset, rather than set up a sting halfway across the country with no evidence whatsoever that Mr. Goldman had ever had any contacts with Montana. But it maintains that even if it were wrong to drag a defendant halfway across the nation solely in order to get the best prosecutorial forum possible, it's of no moment because the government is allowed to engage in forum shopping. It also astonishingly maintains that the only reason the charges were dismissed in Montana to be brought in New Jersey was because of its internal charging policy; it ignores that the District Court of Montana, having seen what the government had "overlooked," *i.e.*, that the case belonged in New Jersey, had already ordered the case transferred by the time the government sought dismissal. The government's arrogance toward those it prosecutes and toward the courts, whose approval it expects (but whose disapproval may simply be ignored), apparently knows no bounds.

The government audaciously asserts that its choice of Montana was proper because that is "where the defendant chose to do business." Gov't. Brief in Opposition at 9. It fails to mention that the only business Mr. Goldman allegedly "chose" to do in Montana was in response to the government's request. The government has produced not a scintilla of evidence that Mr. Goldman "did business" in Montana other than the government-prompted action. It also contends that its manipulation of the system is justified by Mr. Goldman's "solicitation" of the undercover agent. It fails to mention that this "solicitation" was his staffing a booth showcasing these movies at the AVN convention in January, 2006, in Las Vegas, Nevada. As a last resort, the government also mentions the website. It fails to mention that it did not find Mr. Goldman on the website and that the website was defunct as of 2007, well before it brought the charges in Montana.

In support of its blatant forum shopping trip to Montana and, once in Montana, its further forum shopping to obtain "just the right forum" within the state itself, the government cites *United States v. Bagnell*, 679 F.2d 826 (11ᵗʰ Cir. 1982), stating that it can forum shop as long as it likes in the pursuit of an obscenity defendant.  While *Bagnell* did confirm that 18 U.S.C. §3237(a) permits forum shopping because the government can order materials into a district of its choosing, it should be noted that the circumstances of *Bagnell* were notably different in one important aspect:  Florida was the focus of the investigation *months before* the agents ever encountered Mr. Bagnell.  *See id.* at 829-30 (investigation began in early 1977; agent met Bagnell in September, 1977; shipments were in September and December, 1977).  Therefore, when the agent met Mr. Bagnell, he logically requested that the materials be sent to the state that was already the focus of the investigation, Florida.  In contrast, the agent here had no investigation in the works before meeting Mr. Goldman; instead, she began an investigation only *after* meeting him.  When the agent did begin an investigation, she did not begin an investigation of obscene materials in Montana; in fact, <u>no</u> specific location was the focus of the investigation and <u>no</u> specific community had been targeted for protection of its standards.  Instead, the agent began an investigation *of Barry Goldman*.  The agents involved in this case only and ever conducted an investigation of Barry Goldman; the focus of the investigation was always Mr. Goldman, not a particular jurisdiction.  This case therefore stands in stark and diametric contrast to *Bagnell,* in which the forum shopping was minimal in comparison and occurred not in order to prosecute the defendant but long before the agents ever met Mr. Bagnell.[1]

Here, the forum shopping was far more egregious than it was in *Bagnell*.  It was done precisely and solely in order to find a jurisdiction where the government believed the citizens would be offended by the material in question.  This blatant shopping to obtain a community that the government believed would be more receptive to its charge

---

[1] The remaining cases cited by the government are also factually distinguishable, involving what appears to be lesser instances of forum shopping under §3237 and defendants who were either sending brochures out nationally (*United States v. Slepicoff,* 524 F.2d 144 (5ᵗʰ Cir. 1975)) or advertising child pornography in an internet chat room (*United States v. Rowe*, 414 F.3d 271 (2d Cir. 2005)).

is precisely that type of conduct decried by the Tenth Circuit in *United States v. Blucher*, 581 F.2d 244 (10th Cir. 1978).[2]  The issue of forum shopping in *Blucher* was never resolved because after certiorari had been granted, the Solicitor General moved to dismiss the indictment as contrary to Department of Justice policy concerning venue in obscenity prosecutions.  *See Bagnell*, 679 F.2d at 831.  Despite that infamous history, the government attorneys are still "overlooking" that DOJ policy to this day.

 The serpentine road that the government took to indict Mr. Goldman in New Jersey was the result of a deliberate and intentional search for the most favorable forum possible.  It was a search that required a sting operation to be set up, because the government had not a shred of proof that Mr. Goldman had ever done any business whatsoever in Montana.  It was done in contravention of DOJ policy, both with respect to venue and to prosecutorial targets.  It meant dragging a retired man in poor health and with extremely limited resources halfway across the country to answer for having allegedly mailed *three* movies, placing him under strict court supervision, and placing him under media and community scrutiny, until a federal judge refused to play the government's game and transferred the case to New Jersey.  The government's conduct has been outrageous.  Far from "fair, just and right," the government's pursuit of Mr. Goldman for having allegedly mailed three movies has been disproportionate to the alleged conduct, heavy-handed, and inexplicable.  The indictment should be dismissed.

---

 [2]In *Blucher*, the Oregon postmaster had a Wyoming postmaster solicit materials from an Oregon distributor for mailing into Wyoming in a sting operation.  The defendant had no prior demonstrated business or personal contacts with Wyoming.  *See* 581 F.2d 244.  In affirming the conviction over the defendant's challenge to the venue provisions that subjected him to trial in Wyoming, the court criticized "the creative zeal of federal enforcement officers who are free both to shop for the venue from which juries with the most restrictive views are likely to be impanelled and to select for prosecution the materials, publishers and distributors which their subjective judgment dictates."  *Id.* at 246.

## II.   THE GOVERNMENT WAS ANYTHING BUT EFFICIENT IN BRINGING THIS CASE. THE INDICTMENT SHOULD BE DISMISSED.

The government contends that the investigation was a model of efficiency, because it "took less than two years to complete." Yet it completely ignores the fact that the investigation was complete and an indictable offense established (at least, from the government's viewpoint) in 2006 – once Agent McCravy ordered and viewed the movies. That's it. This offense is mailing obscene matter; once the alleged mailing is complete, so is the indictable offense. Yet the government fails to explain why another purchase in 2007 was necessary. Or why another purchase in 2008 was necessary. Each of these purchases was for the exact same offense and involved the same movies. For the government to contend that this investigation required additional time or additional resources is ludicrous. The only thing missing was just the right forum; that's what took the government those two additional years to obtain.

The government claims it sought no "tactical advantage" with the delay, but that was precisely its intent and exactly what it got. It was seeking what it believed would be the most receptive community for its prosecution and, correspondingly, the least receptive community for the defense. It had the advantage of being able to select the most receptive community for prosecution with the specific knowledge of the movies that were subject to prosecution. In addition, during the three years it took to bring this investigation to fruition, the government would logically have been aware that witnesses and evidence would become more difficult to locate because the movies were made well before 2006. It was aware that evidence of the applicable community standards and what was commonly available and accepted at that time would only become more difficult to obtain. Yet it now claims not only government efficiency but no prejudice to Mr. Goldman.

The government also feigns indignation at the idea that it should have charged Mr. Goldman earlier, quoting *United States v. Lovasco*, 431 U.S. 783, 792 (1977), that "no one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so." However, *Lovasco* was talking about the wisdom of deferring prosecution until a prosecutor is satisfied that

-4-

s/he is able to establish a suspect's guilt beyond a reasonable doubt.  As noted, under the government's theory of the case, the date that it could establish Mr. Goldman's guilt beyond a reasonable doubt was when the first movies were allegedly mailed – July 29, 2006.

Mr. Goldman brought his claim under the Speedy Trial Clause of the Sixth Amendment because of the tortured history of this case.  However, a claim lies equally under the Due Process Clause of the Fifth Amendment given the delay in prosecuting Mr. Goldman and the resulting prejudice to him.[3]  The delay was inexcusable, and resulted solely from the government's nationwide maneuvering after SDNY turned it down.  The delay prejudiced Mr. Goldman.  The delay should not be countenanced.  Under either a Sixth Amendment or Fifth Amendment review, the indictment should be dismissed.

## III.   MR. GOLDMAN'S REQUEST THAT THE COURT REVIEW THE GRAND JURY INSTRUCTION IS APPROPRIATE.

While Mr. Goldman was admittedly not precise with his language in one sentence of this section of his motion to dismiss, the crux of his argument was plain:  where the materials at issue were specifically designed for and marketed toward a deviant group, whether those materials impermissibly appeal to a prurient interest is determined by asking whether they appeal to the prurient interest of that deviant group, not to the entire universe of pornographic consumers.  This standard comes from *United States v. Mishkin*, 383 U.S. 502, 508-509 (1966), and it modifies the generally applicable *Miller* test.  Mr. Goldman will seek a ruling from this court that it is *Miller*, as modified by *Mishkin*, that controls in this case.  It is for that reason, and that reason alone, that Mr.

---

[3]Mr. Goldman will not reiterate his argument here.  He incorporates by reference his argument from his initial moving papers, as the applicable facts are the same.  Those same facts warrant dismissal under a Due Process Clause analysis because the government unjustifiably delayed this case three years, to the detriment of Mr. Goldman, solely in order to position itself well for trial.  *See generally United States v. Lovasco*, 431 U.S. 783 (1977); *United States v. Ismaili*, 828 F.2d 153 (3d Cir. 1987).  Of course, if the Court wishes briefing on this issue more specifically, Mr. Goldman will provide it.

Goldman broaches the grand jury proceedings.

Grand jury secrecy, while the starting point of the inquiry, is not also the ending point; the secrecy of a grand jury is not impervious to disclosure requests.  *See Alexander v. FBI*, 186 F.R.D. 102, 107 ("Despite the language in Rule 6(e), no per se rule exists against disclosure of any and all information reaching the grand jury.").  Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) directs, in pertinent part:

> [t]he court may authorize disclosure – at a time, in a manner, and subject to any other conditions that it directs – of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury . . . .

The Third Circuit has set for the standard that a party must meet to establish the grounds for disclosure under Rule 6(e):

> To support a motion for a judicially ordered disclosure of grand jury testimony, a party must show a particularized need for that information which outweighs the public interest in secrecy. [ ] Once such a need is shown, the district court must weigh the competing interests and order so much disclosure as needed for the ends of justice. [ ] In balancing the competing interests, the district court necessarily is infused with substantial discretion. [ ] This court must analyze a district court's decision to disclose grand jury information only to determine if there was an abuse of that discretion.

*United States v. Coplin*, 156 Fed. Appx. 492, 2002 WL 3292543, at * 1 (3d Cir. Dec. 5, 2005) (quoting *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989) (alterations in original)).

Contrary to the government's charge, Mr. Goldman does not base his request upon mere conjecture or speculation.  Rather, Mr. Goldman's belief that the government quite likely incorrectly instructed the grand jury using only the general *Miller* test, unmodified by the *Mishkin* standard, is based upon the government's opposition to using the *Mishkin* standard in past obscenity prosecutions.  *See, e.g., United States v. Paul F. Little*, Crim. No. 8:07-CR-170SCB-MSS-1 (M.D. Fla. 2008) June 3, 2008 at 39 (government opposed expert testimony as to sexuality of deviant subgroup on ground

that it would confuse jury as to first prong of *Miller* prurient appeal test).  If the government's established position is that the appropriate standard is the *Miller* test, unmodified by *Mishkin,* then it is logical that the government, which makes the sole determination of what is placed before the grand jury, including instructions, would use only the more general *Miller* test, without the *Mishkin* modification.

That reality, coupled with the fact that an analysis of the relevant grand jury transcripts – in which the grand jurors are instructed regarding the law and may have asked questions about the standard – is the only way to determine if they received any improper instructions, establish Mr. Goldman's particularized need.  In making this request, Mr. Goldman recognizes the province of the grand jury and does not seek to invade it.  It is for that very reason that he asks that the transcripts be produced not to him but to this Court.

As for the need for secrecy, where "the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it."  *United States v. Socony-Vacuum, Oil Co.*, 310 U.S. 150, 234 (1940).  The interests served by secrecy pertain to preventing the escape of targets, freedom of the deliberative process, preventing tampering with the grand jury or its witnesses, preventing perjury, encouraging full disclosure by witnesses, and protecting the privacy of a target who is ultimately not indicted.  *See Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 355 (3d Cir. 2003) (listing interests protected by grand jury secrecy) (citations omitted).  Those interests are not implicated in the limited disclosure sought here.

Mr. Goldman seeks a very limited portion of those transcripts which, importantly, does not contain any testimony, witness names, or other information that the grand jury secrecy rules are intended to protect.  None of the other interests served by the secrecy of the grand jury would be compromised by the disclosure of the legal instructions given to the grand jurors and any questions regarding the application of the standard.  Further, the grand jury has almost certainly completed its function and, for the reasons set forth above, namely, Mr. Goldman's particularized need and the fact that entire indictment would be predicated upon this infirmity, the interests of justice

strongly favor disclosure of the relevant portions of the grand jury transcripts.

Therefore, it is entirely appropriate to request that a court review the charge to the grand jury where the government's established position in obscenity prosecutions indicates that it would have used only the general obscenity standard, unadjusted for the particular nuances of this individual case. Mr. Goldman's request respects the province of the grand jury by not seeking disclosure to him, only to the Court. Mr. Goldman has made the most limited and tailored request possible that is still cognizant of his constitutional rights, achieving an appropriate balance. The transcripts should be disclosed to the Court.[1] Disclosure of the instructions to the grand jury is appropriate and has been done where there was an issue as to the legal propriety of the instructions given. *See, e.g., United States v. John Hamilton*, 05-876 (Linares, J) (court reviewed charge where challenge was made to grand jury instructions on aiding and abetting).

Once this Court rules on the standard applicable, be it *Miller* or *Miller* as modified by *Mishkin*, Mr. Goldman will then move to dismiss the indictment if it was predicated upon the legally incorrect standard. Mr. Goldman requests limited disclosure to the Court in this case.

## IV.   MR. GOLDMAN SEEKS EXCULPATORY EVIDENCE CONCERNING ANY DECLINATIONS TO PROSECUTE OR DETERMINATIONS THAT THE MATERIAL WAS NOT OBSCENE.

In his discovery request, Mr. Goldman seeks any information or belief rendered by any law enforcement or prosecution personnel that the material in question is not obscene. With this request, Mr. Goldman does not, as the government insists, seek to invade its "deliberative processes." Instead, Mr. Goldman seeks any determination by

---

[1] The government asserts that a challenge to the grand jury instructions is not a basis upon which to dismiss an otherwise valid indictment. It cites *United States v. Hart*, 513 F. Supp. 657, 658 (E.D. Pa. 1981), in support of its position. In *Hart,* however, the defendant was bringing a challenge to the general practice of instructing the grand jury in that district, which would have required disclosure of the grand jury instructions in every case in that district. That, of course, is not the case here. Moreover, Mr. Goldman's argument is that the indictment may well not be valid where the grand jury was instructed using the wrong standard for obscenity, and that decision is for the Court, not the government, to make.

any other US Attorney Offices or other agents that this case should not be prosecuted. As noted in his moving papers, the USAO for the SDNY declined to prosecute this case. Mr. Goldman believes that this declination is exculpatory, and he seeks information concerning this and any other declinations.

Similarly, Agent McCravy did not pursue the investigation once she received the SDNY declination. Again, that failure to continue could be exculpatory or, at a minimum, impeachment evidence. Mr. Goldman seeks to know why the investigation was closed, and then reopened. That information would likely come in the form of beliefs or information that the material is not obscene. While the applicable standard is that of the relevant community, law enforcement and the prosecuting offices would have to gauge that standard in order to be able to judge what to prosecute. On what basis did they make that decision? Mr. Goldman is entitled to know the metric they employed.

Moreover, any decision affirmatively not to prosecute in DNJ or EDVA and instead to go to DMT will be informative for Mr. Goldman's charge of outrageous government conduct. The government has already opened the door by claiming that its "motives were fair, right and just." It should not be able to claim that and then shut the door to the evidence of its motives.

## CONCLUSION

For the reasons set forth above, Defendant Barry Goldman respectfully requests the indictment be dismissed in its entirety. He further requests that the dismissal be with prejudice. In the alternative, that the requested discovery be ordered.

s/**Lisa M. Mack**

**Lisa M. Mack**
**Louise Arkel**

*Attorneys for Defendant*
*Barry Goldman*

## <u>CERTIFICATE OF SERVICE</u>

       I certify that I caused the foregoing Reply of Defendant Barry Goldman to Government's Response to the Motion to Dismiss and to the Pre-Trial Motions be served upon the government *via* electronic filing and electronic mail addressed to the following person:


       Bonnie Hannan, AUSA
       Department of Justice
       1301 New York Avenue NW
       Suite 500
       Washington, DC 20530




Date:  November 19, 2009                      <u>s/ Lisa M. Mack</u>